Mr. Beiser, you've reserved one minute for rebuttal, so that gives you nine minutes out of the gate. Thank you. Thank you. May it please the court. I'm Andy Beiser and I'm the attorney for the appellant Travis Woods. The district court dismissed Mr. Woods' claims of disability discrimination at the summary judgment stage. However, the court made three separate errors. And I'll begin with the easiest issue to tackle, which is the district court's failure to even address Mr. Woods' alteration standard claim. Can I ask you about that? Sure. Because I read the complaint and I didn't see it in the complaint. So, I mean, the complaint is really all about accessibility. It doesn't mention section 12147. It simply says Title II of the ADA and the Rehabilitation Act. But none of the allegations in the complaint refer to alterations whatsoever. Sure. We learned about that through discovery. I know, but don't you have to change your pleading? No, Your Honor. Title II of the ADA has many subparts and we're not of the belief that you have to plead the specific subpart in order to make these types of claims. We made a program access claim. We made a reasonable accommodation claim as well. And I don't believe that we need to delineate every single- But in any event, is just putting a sign an alteration? Sure. In this case, it is. The ADA states that it has to affect the usability of the facility. And in this case, it's the landing pads. Excuse me, it's the bus stops. The alteration need not be structural, as Appelli claims. It just has to either affect or could affect. It doesn't have to be structural, but it has to be something which is an alteration. And I'm not sure that anything that you put up comes up with that. Now- I understand. Perhaps the district court should have discussed it, but of course we can deal with that ourselves. For sure. I agree. And I would say that the bus stops that they put up, 50% of the sign had the international symbol of accessibility and the words accessible stop. And that impacts users' understandings of what this is. So I wouldn't disagree with that, that the sign suggests something. But the question I think is, is were they failing to comply with their requirement of putting the sign up? Or did they actually make an alteration? And if I could point you to 49UCFR 37.3, it lays out a bunch of things that are saying including but not limited to. What do you think a sign is most like? Sure. And I would say that putting up a sign that says this is an accessible stop is akin to, say, painting a parking space with the blue and saying this is an accessible parking space. Right? And it's too sloped and there's no way to get from the parking space to the sidewalk. I'm going to talk to your colleague about compliance and what that means. I'd instead like for you to focus on the question as to what of the things that 49UCFR 37.3 tells us are things like an alteration. Which one do you think putting a sign up is? So putting a sign up, it changes the way that users can read what the stop is. So you think it's like painting or wallpapering? It's just it's a redesignation. I'm sorry. Okay. I mean, I see remodeling. I see renovation. I receive rehabilitation. I say reconstruction. I see restoration. I see rearrangement and structural parts or elements. I see reconfiguration of walls. Which of those do you think are most like putting up a sign? I'm just trying to figure out what is the best hook for saying that there was an alteration. I don't I don't know. I haven't studied all the different examples to make that to make that determination. But I think my general point is, is that it affected the usability. And that's what that's what the statute says. What's your best case for this proposition? My best case for this is the case out of the Eastern District of Louisiana, Tatum versus Doctors and Associates, where the court there likened the repainting of a, like I said earlier, of a parking space blue. And that was an alteration, changing the usability of that space. They took it from a normal space into an accessible space, but only by painting it and did not meet the other requirements of what an accessible parking space is. And that's what we have here. But your main argument has to be that somehow the system that they have for picking up people who have disabilities is not the same as having a bus system that is. Now, that's an interesting question because separate can be not equal, but separate can also be equal. And so the question is, is this, is the arrangement that they have one that is sufficiently, let's call it insulting, so that it doesn't meet the requirements? Or is it a reasonable system under the circumstances? And that's really what the issue that you're saying is, that the fact that this guy can call people, that they can pick him up and bring him, nonetheless, is not the same as having a bus that allows him to get off at the right place, because somehow that's insulting. Now, is it? I wouldn't use the word insulting. It's a separate, the ADA says that each program or activity needs to comply with the ADA. And- The word is not insulting, it's more like independently, right? Like he cannot live independently when he is, right? Isn't that more the argument that you're making? Yeah, I mean, the main argument is that Mr. Woods wants to catch the bus like everyone else. He wants to be able to have- But that is saying he has to be treated the same way. The question of whether he can live independently, which was the question that Judge Perez was asking, is a separate one. That is, is he eligible for the specific pickup? And is that an adequate treatment? That, you're saying each of these has to be looked at independently, and each one has to be fully compliant. But where do you get that? I get to that through the statutes, the language of the law, which is at 42 USC section 12148A1, which says, it shall be discrimination for a public entity to fail to operate a designated public transportation program or activity conducted in facilities such that when viewed in entirety, the program or activity is readily accessible. And so a public entity can offer many services, many activities, each of which has to comply with the ADA. And in this case, for the district court to say, well, the reasonable accommodation is for Mr. Woods to take the paratransit, the Supreme Court case of Yeske also backs this up, that each, the paratransit has to be compliant and the fixed route bus service has to be compliant. What do we do about the precedent in the circuit that says that access need not be total as long as it's meaningful? Because one of the things that I wonder analytically is different, is instead of treating the paratransit as a separate, what if we treat that as the accommodation for when this bus system is falling down? And if that becomes the accommodation, then isn't that a way of making sure that the transit system is useful? It can't be an accommodation for the reasons I just said, but also that there are many differences between paratransit and the fixed route bus service. I'm sorry, but paratransit is approved all across the country, right? Lots of people have a paratransit system that doesn't depart too much from the way it works in Oneida, right? Sure, there are lots- So the court hasn't struck those down yet, right? No, the paratransit is meant to be a safety net for folks who cannot otherwise ride the bus. Right, so why isn't that safety net layered on top of the bus system? Because folks with disabilities who want to ride the bus and use transportation on the spur of a moment should have that right. But it doesn't say safety net. It says complement. Your view is that complement and safety net are synonyms? No, of course not, Your Honor. There is other language that we quoted which shows that it's supposed to be a complement for folks who can't- This is the definition of complement. Something which, when added, completes or makes up a whole. Something that supplies another's deficiencies. So that would seem to suggest that when viewed in its entirety, the transportation system between the bus route and the paratransit complements itself so that it's a meaningfully accessible system, right? In the way I read the statute and the case law, we do not look at the transportation system as a whole of buses and subways- I think that's right. You say each part has to be viewed separately. But where in the statute or in our cases is it clear that each part has to be viewed separately? And if you did that in other areas of disability, how much does every single possible way, except of saying that everything has to be done so that somebody is disabled for any individual thing, must be treated exactly the same way as somebody who is not, rather than getting to the same result? I mean, what is it that this statute is actually telling us? I think if we look at the language of the statute where it uses the word, a program or activity has to be accessible. We look at YESKY, which says that a public entity can offer many services- But that is a program or activity. I would argue that a program is the fixed route bus system is a program. A bus stop is a program? The fixed route bus service is a program. Well, I mean, the city has an obligation under 121.48 to operate a designated public transportation program or activity that when viewed in its entirety is accessible, right? So what does entirety, what does that mean, when viewed in its entirety? When you look at the entirety, so our expert found that 91% of the bus stops in Utica do not contain landing pads. And so when we look at the fixed route bus service in its entirety, we see that it does not provide this meaningful access because they don't have the landing pads. That's fine if you look at the bus stop in its entirety and say that that is the entirety. But you can also look at the transportation system in its entirety and say that basically this person is getting a service which is essentially the same as that which everybody else does. So your honor, in the Yeske case, it speaks about prisons. And you could look at a prison as a system which has many different activities. It has medical, it has rehabilitation, it has, and in Yeske, it says that each of these activities must be compliant under the ADA. And it's the similar- I am less concerned with how you play the language because you can play the language either way. I am more concerned with whether in the end this person is treated decently. And that question, that's why I began with saying insulting. There may be ways of getting him from one place to another which is sufficiently different from the way other people are treated that the ADA says you're not treating him equally. There are other ways instead that say he's being treated in a way that is decent. And it seems to me that what they have done here is a pretty good job of doing that. I would argue that they have not because of the many differences between paratransit and the fixed route bus services. Okay, so let's assume, and I'm actually sympathetic to this, that one couldn't have a terribly inaccessible or very inaccessible transit system and say, oh, we can get away with all of this because we have a paratransit. I'm sympathetic to that. My question, though, is why does the landing pads, the only signifier of what makes the transit system inadequate? I mean, I think you wouldn't disagree with me that the law doesn't say that every stop must be, must have your particular client's desired method of accessibility. And that, to me, is what comes in the other things like stopping at another place. And you haven't given us any number. Like, you've said 91% of them don't have landing pads. My question would be, like, what percentage of them are not actually safe and cannot be made safe? Sure. Centro's own expert agreed that we need flat landing pads because we don't want wheelchair users tipping over and hurting themselves trying to go through the grass or being dropped off, as they said, on a curb cut, which is by definition sloped. And so, you know, we have put forth the evidence at the district court level with our expert report who said that either there were no landing pads at all or the landing pads were either too sloped. But the expert didn't say that the only way to keep somebody safe was through landing pads. Is that correct? No, he was asked, no. My question is, of the number of stops, 91% of them don't have landing pads, I'll take that. What percentage of them don't have a different kind of accommodation that could be made that would allow your client to live independently? So I don't know that answer, and defendants don't know that answer either. But Mr. Woods, their proposed accommodation of dropping off Mr. Woods in active driveways and on curb cuts, which are by definition sloped, is unsafe. And a wheelchair user should not be, that's why we have the regulations about the landing pads. But the ramble also, right? They all are outfitted with ramps that can allow someone notwithstanding the curbs. Is that correct? Yes and no. The reasonable accommodation that was told that Mr. Woods could have when he made his request was to be dropped off in active driveways where there are other cars driving around and on curb cuts which itself are sloped. So let me ask the question a different way. Is it your position or your client's position that it is landing pads or bust? They either put in landing pads or the transit system is not accessible. Yes. That is the only way that they can accommodate. In this case, yes, because you need a flat, safe area for someone in a wheelchair to board and alight. If they take their hands off their chair for a second, they should not have to roll back somewhere or travel on the grass and try to navigate every single time that they're on the bus to say to the bus driver, okay, that's a good spot. And then the bus driver says, well, I don't know if that's a good spot. That's an unnecessary burden. Mr. Weiser, would you agree that if we find that changing the signage is not an alteration, then the city in Centro had no obligation to make structural changes. Would you agree with that? I would not agree with that. Why is that, given the exception to 121.48? So we have three theories of our case. One is the alteration. If your honors- Okay, I'll get the alteration. Okay. So the program access standard, okay? And so the court, the district court held that A- Just answer my question. Yes, your honor. The public transportation, I mean, 121.48 says that paragraph one, with respect to transportation programs, will not require structural changes unless there's been an alteration, basically, right? Under 124.78. No, the program access standard states that when we look at the program in its entirety, it has to be accessible and usable to wheelchair users. And in this case, it is not- So the exception doesn't apply? I'm not looking at the alteration standard anymore. I'm looking at the program access. I'm looking at 121.48. A-2, which says paragraph one shall not require a public entity to make structural changes to existing facilities in order to make such facilities accessible unless, and to the extent required, by 121.47-A. So if there's no alteration under 121.47-A, how would the city and Centro have an obligation to make structural changes like you're seeking? I would look at 42 U.S.C. section 121.48. That's what I'm looking at. A-2, the exception. I don't read it that way. For program access, there's- I don't have it right in front of me at the moment. Paragraph one shall not require a public entity to make structural changes to existing facilities. That's what it says. So your argument is that if the existing system was one that was not usable by your client at all and leave aside whether there is another, that would not meet the ADA, that they would be required by the ADA to do something apart from structural changes if the existing system did not allow your client to travel. That's your argument. My argument is if they violate the program access standard, then you have to make the structural changes to make it accessible and usable for wheelchair users, and it cannot because paratransit is not a reasonable- It's not a- Excuse me. I'm losing my words here. The paratransit is not sufficient because of the many differences, which we've briefed heavily, and to drop someone off on curb cuts and in the dirt and in active driveways is unsafe. All right. Well, you've got a minute for rebuttal. We've gone way over it. Thank you. Let's hear from Mr. Hunt on behalf of the city of Utica and Centro of Oneida. May it please the court, Brad Hunt from McKenzie Hughes representing Centro of Oneida and the Central New York Regional Transportation Authority, but not the city, actually, which has been stipulated out of the case. I think that the key to this case and the reason why summary judgment is appropriate is that the plaintiff's position is and has consistently been that its landing pads were bust, and he just confirmed that in an oral argument. I'm sorry. Can I ask, though, what does that sign mean? What criteria did you have to meet to put that sign? So the record actually doesn't have an answer to that question. I know, and I'm pretty confident about it. I can speculate if you want based on what I've heard, but it's not in the record. What does your client think they are saying? Again, they don't know definitively, but if you want me to tell you what we think, I'm happy to. Go ahead. It's because the buses are accessible, and, you know, they didn't mean anything about stops in particular. They have lifts. The buses have lifts. The buses have lifts. The buses comply. But why does it say stop? If somebody at the bus had a sign that said, this bus has a lift, I think you'd be fine. But I'm finding it very hard to understand how it would not be misleading to somebody who is riding the bus, when they see that sign, to not think that they can get off because there is some way of keeping them safe. Then I would suggest, to the extent that there is any problem like that, I think that would be a notice issue, which has not been raised in this complaint or in this case. It's not an issue about the overall accessibility of our system. But what about a compliance, right? There's no standard. People just went randomly putting up signs saying that this was an accessible stop. It's not random. It's every bus stop that we have. No, okay, so you've ‑‑ I mean, I understand what you're saying, but, again, it's not. They weren't selectively saying anything about any particular stop. They were just ‑‑ they're just bus stop signs that says this is a stop. You could bring a compliance action saying that you are misleading and misrepresenting the compliance with ADA standards or something by calling. I mean, the word accessible means something. There may be an issue there, but that would be a separate issue that's not raised by this lawsuit. Okay, and you do not believe that this case would foreclose this client or this plaintiff from bringing that lawsuit? I don't know about that for sure, but I know that it's not raised by this client in this case. Well, presumably, if somebody gets on a bus stop that is wrongly graded and falls, they might be able to sue, right? Sure. Sue and just tort. Yes. So there are a lot of reasons to make sure that this doesn't happen, I would assume. But it hasn't been pled as part of this case. That's correct. And even in the amicus brief that supports the plaintiffs, they discuss notice requirements. I would like to go to something else. The presiding judge suggested that unless there is a modification, there is no duty to do anything but to change what was there before. Are you taking a position that if the bus system was not one that people who were handicapped could use, the ADA would be being complied with so long as no changes were being made? Because at the end, that's what the argument that the presider was putting to the other side, and the other side is kind of waffling. Now, is it your position that if the buses were not something that somebody that is handicapped could get on to, and there was no other way, that that would still be compliance unless there was a change? So I don't think that the landing pads alone necessarily guarantee compliance. That isn't my question. My question is, so is it the case that if you have an existing system which cannot be used by a person who is handicapped, unless there is a modification, that system nonetheless complies with the ADA? No, that's not my position. That's not my position. I think that on the way this case exists, however, there's no issue of fact as to the overall compliance of the system. And the reason is this. So as the presiding judge correctly pointed out, when you look at the program access statute, which is 42 U.S.C. 1214A, what's that? You mean the district court? I was talking about you just now. I'm confused. Why do we care what I'm saying? Just because you made a good point in your questioning. That's all. And I just think it's an important point because that is the program access statute, not the alteration provision. And it says for program access, which is what he relies on. And you are saying that the program as a whole meets the requirement? Yes. I'm saying that. And not only that, but I'm saying that in this case, you could imagine a different case with a different system where there might be problems in the way that the paratransit system operated or in the way that the flexible boarding location operated. There's not even an allegation of that in this case because their position has always been just make the landing pads 8 feet by 5 feet with an appropriate slope. That's it. And they object to the paratransit system, to paratransit systems in general, not based on any specific way that Central operates its system, but just the nature of systems. But you don't need to win for us to go so far as to say that just because there's a paratransit system, whatever noncompliance exists in that. Your position is that you have many ways. You have lifts. You have accommodating bus drivers. You have, right? That's the argument. That's correct. And, I mean, I do believe that our system is compliant. But, again, in this case, there's no allegation that our paratransit system. Your position is that if you take the thing as a whole rather than in separate parts, what they have done here is pretty darn good. Absolutely. It's that another system might not be. That is, you might have the same thing but difficulty in calling paratransits or another system in which people were not instructed to try to drop people off nearby and that any of those might fail, but that this one, if you can view it as a whole, is okay and not insulting and that you can view it as a whole. I think that's your position. That is correct. And, furthermore, that there's not even an allegation by the plaintiff or any evidence that our paratransit system or our flexible boarding policy is not okay. His only argument is that you should ignore those accommodations altogether, and I think that's inconsistent with the law. I think that you have to look at the system as a whole. But you do concede that another system that might be like this or with allegations that there were specific failures might not be. That is, you're saying look at it as a whole, but it may be that as a whole it fails if it isn't done right. That could happen. It hasn't happened here, and there's not really an allegation or evidence that it's happened here. Right. But the exception to 12148 is just with respect to structural change. It doesn't mean that other things don't have to be done, perhaps. It's just structural change. That's correct, and the only change that he is requesting in this case is a structural change. You would agree, on the other hand, that if you repaved bus stops in Utica, they would have to, in that case, that is an alteration that would have to meet ADA compliance standards. Correct. That's right. And our position is that installing signs is not an alteration. So what are we supposed to do with the fact that the district court here didn't even address the alteration issue? Well, you can affirm for any reason supported by the record. Well, I guess that's right, but I mean, I made the point that this isn't even in the complaint. There's no discussion, period, about alteration. That's correct. It's not in the complaint, and I think it was in the plaintiff's summary judgment papers, but not as clearly and distinctly as it was on appeal. I think they've crystallized it into three theories. This might go to whether it's appropriate for us to discuss it or to send it back to the district court. That is, they did raise it at some point, but the question of when we decide or when we think it's best for the district court to decide might have to do with how they presented it in the first place. I think it's a pretty clear legal issue, honestly, whether this is an alteration. First of all, there's no case law at all that supports their argument. They're asking for- I mean, Judge Perez just asked you a question, and you speculated as to why they slapped wheelchair symbols on bus stops. That's not even been developed in the record. It's not alleged in the complaint, and it's not been developed through discovery. Well, look, if you're looking at the question, is this an alteration? Judge Perez asked about the definition in the regulations, and I think that installing signs, I would submit, is actually less significant than several things that are listed in the regulations as not meeting the definition of alteration, which include painting and wallpapering, changes to mechanical or electrical systems. So I think just looking at the regulations, I think it's a pretty straightforward question. This is not reconstruction. It's not remodeling. It's not renovation. And the one thing that we do have that does directly address the question is this report that is on the U.S. Access Board's website, and we cite this in our brief. It's on their website. It's on their letterhead, and it specifically asks the question, does installing a bus stop sign trigger the alteration requirement? And the answer is no. And to respond to a point that that plaintiff made in his brief, I'm not arguing that that report itself has the authority of law. It is a report of a subcommittee of the U.S. Access Board that, again, is on their website and is on their letterhead, and given that there's no case law that specifically addresses the question, if you install a sign, does that trigger the alteration requirement, I think is persuasive here. I mean, I think the bigger question is, does a sign misrepresent someone and put somebody in a bad spot, and does it falsely suggest that you guys are ADA compliant when you're not? I mean, that doesn't mean that the sign's not problematic. It may mean that it's not an alteration, right? Yeah, I think it's not an alteration, and, again, I think to the extent that the sign is problematic, I think that's a separate issue that's not raised by this lawsuit. That would be a suit that was brought. I think that's correct, yes. And I think it's different from the Tatum case that he cited, which involved actually converting regular parking spots to handicapped spots. These signs didn't change anything. They're just signs that marked every bus stop in Utica. Can I ask you briefly about standing? Yes. That would seem to be a threshold question. You've tucked it at the end of your brief. That's an area where the district court disagreed with you. You didn't cross appeal. So what are we supposed to be doing with standing? So, I mean, it's a jurisdictional issue, so you can certainly address it, notwithstanding the lack of a cross appeal, and I put it at the end of the brief because the district court did disagree with us on that. But I do think when you look at it. But it would be dispositive, right? Of course, it would be dispositive, and I do think when you look at the complaint and at the record as developed in discovery, I don't think that there's facts to support that he intends to return. But let me ask you, is this an issue of constitutional standing or of statutory standing? That is, could a statute give somebody like opposing party standing to bring it because he is linked enough to it? And the question is, have they done it or is there so little connection that is a constitutional matter he doesn't have standing? Because if it's a constitutional matter, then we have to decide it. If it's not a constitutional matter, we can always assume it, even under Justice Scalia's position that you must decide standing first. But that was only for constitutional issues, not for statute. Yeah, our position is that it is a constitutional issue, that he has no injury in fact, and that even if we were ordered to repave every bus stop in the city of Utica, Mr. Woods would not ride the bus because that's our position. All right, thank you. Thank you very much, Mr. Hunt. We'll now hear from Mr. Bizer for a minute or so. Thank you, Your Honor. There was some speaking of what Mr. Woods had a problem with, and that the flexible boarding and a lighting system that they have, he did have a problem with it. He was dropped off in a driveway at McDonald's and couldn't get up the driveway and had to be assisted. So yes, his position is that being dropped off in commercial driveways and on the grass and in curb cuts is not compliant with the ADA. And furthermore, while the paratransit itself may comply with the ADA, again, it is not a reasonable accommodation for someone who wants to ride the bus because of the many differences between just catching the bus at a moment's notice with a group of friends and having to call ahead with paratransit. Now, have you made arguments that paratransit is not enough? That is, I'm now a little bit confused because earlier you were saying it doesn't matter whether that's enough. These two have to be viewed separately. Now you are saying, well, it does matter because that is not an adequate thing even if we view it together. Which is it that you're arguing? I'm arguing that each has to be compliant with the ADA. Yeah. And for, to piggyback one onto the other, it has to, which you can't do, but even if you wanted to, the differences are so distinct that it causes a separate but an equal form of transportation for wheelchair users. With respect to the access board, where it says putting up, simply putting up a sign, they're not simply putting up a sign here, they're putting up a sign that represents to wheelchair users, this is an accessible stop and it is not. And lastly, with the Tatum case, while it is not binding on this court, the reasoning is 100% on point in that a parking space that is otherwise not compliant with the ADA was painted blue to say this is an accessible parking space. It was not. The district court judge there held that it was an alteration and triggered the alteration standard. But, I mean, don't the regs say that painting is generally not an alteration? Correct. But in this case, they painted it so that it would designate. It wasn't like the sign got faded or something was faded and they repainted it. This was, they painted it blue, they put up a sign that said this is an accessible parking space when the parking space did not meet the slope and the size regulations of what a parking space is under the ADA. It's 100% on point. And while it is not binding to this court, the reasoning is sound. Thank you. Thank you, counsel. Thank you. We will reserve decision.